IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ORVAL DEAN BARTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-09-245-D |
| | ) | |
| FOREMOST INSURANCE COMPANY and | ) | |
| FARMERS INSURANCE COMPANY, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## **ORDER**

Before the Court are Plaintiff's Motion for Partial Summary Judgment [Doc. No. 24] and Defendant Farmers Insurance Company, Inc.'s Motion for Summary Judgment [Doc. No. 25].[1] Both motions are fully briefed and at issue.

Plaintiff asserts in this diversity case claims for breach of contract and breach of an insurer's duty of good faith and fair dealing arising from a dispute concerning uninsured or underinsured motorist ("UM") coverage under an automobile insurance policy. Specifically, Plaintiff claims entitlement to UM coverage of $250,000 and payment for injuries suffered on July 25, 2005, although the written policy in effect on that date reflected no UM coverage. Plaintiff seeks reformation of the policy to provide an amount of UM coverage equal to the liability limits of the policy, as he allegedly requested from Defendant's agent. Also, Plaintiff claims Defendant acted in bad faith by failing properly to investigate his injury claim and by engaging in a practice of denying or minimizing coverage. Defendant denies that the policy provided any UM coverage, but

---

[1] Plaintiff voluntarily dismissed Defendant Foremost Insurance Company by a Stipulation of Dismissal with Prejudice filed June 22, 2009. Therefore, all references to "Defendant" in this Order mean the sole remaining defendant, Farmers Insurance Company, Inc.

it has tendered payment for statutorily mandated coverage in the amount of $25,000 under Okla. Stat. tit. 36, § 3636, because it cannot produce a signed waiver of UM coverage for the policy. *See May v. National Union Fire Ins. Co.*, 918 P.2d 43, 48 (Okla. 1996).

Plaintiff moves for summary judgment only on his breach of contract claim, requesting a determination as a matter of law that he is entitled to reformation of the policy and that Defendant's payment of only $25,000 in UM benefits is a breach of the parties' contract. Defendant moves for summary judgment in its favor on all claims.

**Statement of Facts**

The relevant facts are substantially undisputed. Plaintiff was injured on July 25, 2005, when he slipped and fell while attempting to load a disabled vehicle onto a flatbed trailer for his employer. At the time, Plaintiff was insured by Defendant under an automobile policy, No. 08 16166-52-00 (the "Policy"), that provided liability coverage for bodily injury in the amount of $250,000 per person and $500,000 per occurrence. In October, 2005, Plaintiff filed a claim with Defendant to collect UM benefits for the injuries he suffered in July, 2005. Plaintiff subsequently submitted to an examination under oath at Defendant's request.

The Policy was first issued in November, 2003. At that time, the written declarations stated the Policy provided UM coverage in the amount of $10,000 per person and $20,000 per occurrence, and a premium of $47.80 for UM coverage was charged. However, a subsequent written declaration for the Policy issued upon renewal in May, 2004, indicated that the Policy provided no UM coverage and no premium was charged for UM coverage. Defendant's history of the Policy showed UM coverage was removed on December 23, 2003. During its investigation, Defendant's review of UM coverage forms for the Policy revealed a signed form dated November 5, 2003, which was marked to indicate the insured wanted UM coverage but was incomplete. The form had an "x" next to the

2

statement: "I want Uninsured Motorist coverage in the following amount: $_____ per person / $_____ per occurrence." *See* Pl.'s Motion [Doc. 24], Ex. 8; Def.'s Motion [Doc. 25], Ex. 11.[2]

Subsequently, Defendant located a change request submitted for the policy, which purports to ask that UM coverage be removed because the insured had "refused at time of binding and we sent UM waivor [sic] to region."[3] *See* Def.'s Motion [Doc. 25], Ex. 2. Defendant also located a second signed UM form dated November 5, 2003.[4] This form reflects a waiver of UM coverage and contains a handwritten notation in the top margin, stating: "This is 2nd notice client doesn't want UM, he signed form we mailed original and kept copy in file. Thanks for your help." *See* Def.'s Motion [Doc. 25], Ex. 15. Consistent with these documents, a declarations page with an effective date of December 11, 2003, reflects the removal of UM coverage and a $47.80 premium credit due to a reduced premium. A separate notification dated December 24, 2003, also shows the Policy was changed to provide no UM coverage.

Plaintiff testified during his deposition that the first, incomplete UM form does not contain his signature and he does not know whether he completed any UM form or waiver for the policy.[5] Plaintiff does not dispute his receipt of the declarations pages for the Policy, but he does not recall

---

[2] On the date of this form, the state-mandated minimum limit of UM coverage was $10,000 per person and $20,000 per occurrence. No "x" appears next to a statement on the form indicating the insured's desire for the minimum level of coverage or for the same amount of UM coverage as liability coverage.

[3] Plaintiff argues that this document and three other exhibits should be excluded pursuant Fed. R. Civ. P. 37 because they were not produced with Defendant's initial disclosures. However, Plaintiff has not filed a motion for sanctions under Rule 37, nor does he provide supporting facts and legal authorities to support such relief. Further, Defendant in its reply brief adequately explains the timing of its production.

[4] Defendant reportedly made this discovery after learning in preparation for Plaintiff's deposition that he did not believe the first UM form contained his signature.

[5] Although Plaintiff was not asked about the signature on the second UM waiver form, a similar signature appears on both forms.

whether he read any written declarations.[6] Plaintiff admits he made no attempt to contact Defendant or its agent, Mr. Harris, to advise them that the Policy did not provide the coverage he had requested.

Plaintiff did contact Mr. Harris in March, 2005, and requested a change of the vehicle insured by the Policy. Plaintiff has testified that, as usual, this request was made in a telephone conversation. Plaintiff admits he ordinarily received written confirmation of a change in the Policy. A written declaration for the Policy issued upon renewal in May, 2005, reflected the substitution of vehicles but stated the same coverages shown by the prior declaration, including no UM coverage and no premium for UM coverage.

Plaintiff has testified, however, that he wanted to maintain UM coverage limits greater than the state-mandated minimum and he communicated this desire to Mr. Harris. According to Plaintiff, he selected a liability limit of $250,000 for the Policy to allow the same amount of UM coverage. Plaintiff is not aware of any document to support his claim that he orally requested $250,000 of UM coverage. Plaintiff has stated that he paid a monthly bill for all premiums owed on his insurance policies with Defendant, but those bills did not show the coverages for individual policies.

In November, 2007, Defendant offered to pay $25,000 as the limit of UM coverage available under the Policy based on a determination that Defendant lacked a valid waiver of coverage, that is, only the incomplete UM form dated November 5, 2003, had been located at that time. Plaintiff responded with a demand to be paid $250,000 for UM coverage equal to the liability limit of the Policy. Defendant had evaluated Plaintiff's injury claim in the range of $142,737.60 to $147,737.60, with a reduced settlement value to account for a finding of 30% contributory negligence.[7] After

---

[6] When asked during his deposition if he read them, Plaintiff answered, "Probably not." *See* Barton Dep. 30:21-25.

[7] Defendant also presents evidence to show that all of Plaintiff's medical bills related to the accident
(continued...)

receiving Plaintiff's demand, Defendant continued to investigate the issue of UM coverage. Defendant attempted to contact the responsible agent, Raymond Harris, but learned that he had retired and the current agent had no notes from 2003.[8] On December 27, 2007, Defendant tendered the undisputed amount of policy proceeds ($25,000).[9] In June, 2008, Defendant informed Plaintiff it would not extend coverage beyond the amount already paid. Plaintiff filed suit in state court in August, 2008, and Defendant timely removed the case to federal court in February, 2009.

## Discussion

Upon careful consideration of the parties' submissions, the Court concludes that genuine disputes of material facts preclude summary judgment to Defendant under Fed. R. Civ. P. 56(a) on Plaintiff's reformation claim. The record contains conflicting evidence and inconclusive documentation regarding Plaintiff's purchase of UM coverage under the policy. Plaintiff's testimony is uncontroverted that he orally requested from Defendant's agent UM coverage equal to the limits for liability coverage. Defendant denies that such a request was made based solely on documents that are unauthenticated and remain unexplained by any witness. Defendant also relies on written declarations that Plaintiff received with policy renewals, which Plaintiff admittedly failed to read. However, under Oklahoma law, an insured may rely on assurances of an insurer's agent and obtain reformation of a policy to provide the coverage orally promised. *See Gentry v. American*

---

[7] (...continued) were paid by his employer and that he received an additional $75,000 in settlement of his worker's compensation claim. Plaintiff contends these facts are irrelevant because Defendant cannot reduce the amount of his UM coverage by amounts paid in worker's compensation benefits. *See Hartford Ins. Co. v. Dyer*, 61 P.3d 912, 915 (Okla. Civ. App. 2002); *see also Chambers v. Walker*, 653 P.2d 931, 935 (Okla. 1982).

[8] Defendant notes that Plaintiff refused to submit to a second examination under oath; Plaintiff denies any obligation to be examined twice.

[9] Plaintiff received a total UM payment from Defendant of $75,000, which represented $25,000 of UM coverage on each of three automobile insurance policies in effect in Plaintiff's household.

*Motorist Ins. Co.*, 867 P.2d 468, 472 (Okla. 1994). Also, an insured may assume a renewal policy provides the same coverage as the original; "it is the duty of the insurance company to call attention to any changes in the policy." *See Wynn v. Avemco Ins. Co.*, 963 P.2d 572, 574 (Okla. 1998).

In short, on the record presented, the Court finds Plaintiff has made a <u>minimally</u> sufficient showing to raise a genuine dispute as to whether the policy should be reformed to provide the amount of UM coverage allegedly promised by Defendant's agent. In reaching this conclusion, the Court is constrained by Rule 56 to accept Plaintiff's testimony as true and to draw all reasonable inferences in his favor, regardless whether the Court would make the same inferences.

However, the evidence of record clearly establishes the existence of a legitimate dispute regarding Plaintiff's assertion that he should be entitled to $250,000 of UM coverage, thereby precluding a finding of bad faith on the part of Defendant. *See Skinner v. John Deere Ins. Co.*, 998 P.2d 1219, 1223 (Okla. 2000). It is undisputed that the "waiver" form relied on by Plaintiff is ineffective to establish – on its own – a request for more than minimal UM levels or the existence of an agreement between Plaintiff and Defendant's agent that the policy was to provide $250,000 of UM coverage. Further, as previously noted, and in apparent conformity with a change request concerning the Policy, declarations subsequently provided by Defendant indicated no UM coverage was afforded by the Policy, despite Plaintiff's failure to read the same.[10] These facts make abundantly clear the existence of a legitimate dispute as to the level of UM coverage, and such facts are uncontroverted. Thus, Defendant is entitled to summary judgment on Plaintiff's bad faith claim.

---

[10] Although these facts and documents were not initially disclosed in this litigation, they were known to Defendant at the time it concluded the investigation regarding UM coverage and made a final decision not to extend additional benefits, as evidenced by the legal opinion on which Defendant relied to deny additional coverage. *See* Def.'s Motion [Doc. 25], Ex. 17 at 8.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Partial Summary Judgment [Doc. No. 24] is denied, and Defendant's Motion for Summary Judgment [Doc. No. 25] is granted in part and denied in part as set forth herein.

IT IS SO ORDERED this 27th day of December, 2010.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE